IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § § | |
| vs. | § § | No. H-12-244-S |
| NICK PATZAKIS, D.O. VALDIE JACKSON, VALNITA TURNER, R.N., JARVIS THOMAS, ROSA DAVIS, R.N., and MARTHA CLAIRE DENNING, R.N. | § § § § § § § | |
| Defendants | § | |

## FIRST SUPERSEDING INDICTMENT

The Grand Jury charges:

At all times material to this Indictment, unless otherwise specified:

### General Allegations

1.     The Medicare Program ("Medicare") was a federal healthcare program providing benefits to individuals who were over the age of 65 or disabled.  Medicare was administered by the United States Department of Health and Human Services, through its agency, the Centers for Medicare and Medicaid Services ("CMS").  Individuals receiving benefits under Medicare were referred to as Medicare "beneficiaries."

2.     Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

3.     "Part A" of the Medicare program covered certain eligible home healthcare costs for medical services provided by a home healthcare agency ("HHA") to

1

beneficiaries requiring home health services because of an illness or disability causing them to be homebound. Payments for home healthcare medical services under Medicare Part A were typically made directly to a HHA or provider based on claims submitted to the Medicare program for qualifying services that had been provided to eligible beneficiaries, rather than to the beneficiary.

4.      Physicians, clinics and other healthcare providers, including HHAs that provided services to Medicare beneficiaries, were able to apply for and obtain a Medicare "provider number." A healthcare provider that was issued a Medicare provider number was able to file claims with Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare identification number, the services that were performed for the beneficiary, the date the services were provided, the cost of the services, and the name and identification number of the physician or other healthcare provider that ordered the services.

5.      CMS did not directly pay Medicare Part A claims submitted by Medicare-certified HHAs. CMS contracted with different companies to administer the Medicare Part A program throughout different parts of the United States. In the State of Texas, CMS contracted with Palmetto GBA ("Palmetto") to administer Part A HHA claims. As administrator, Palmetto received, adjudicated and paid claims submitted by HHA providers under the Part A program for home healthcare claims.

6.     The Medicare program paid 100 percent of the allowable charges for participating HHAs providing home health services only if the patient qualified for home healthcare benefits.  A patient qualified for home healthcare benefits only if:

a.     the patient was confined to the home, also referred to as homebound;

b.     the patient was under the care of a physician who specifically determined there was a need for home healthcare and established the Plan of Care (or "POC", described in Paragraph 9, below); and

c.     the determining physician signed a certification statement specifying that:

    i.     the beneficiary needed intermittent skilled nursing services, physical therapy, or speech therapy;

    ii.     the beneficiary was confined to the home;

    iii.     a POC for furnishing services was established and periodically reviewed; and

    iv.     the services were furnished while the beneficiary was under the care of the physician who established the POC.

7.     Medicare Part A regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the HHA.

8.     These medical records were required to be sufficient to permit Medicare, through Palmetto and other contractors, to review the appropriateness of Medicare payments made to the HHA under the Part A program.

3

9.     Among the written records required to document the appropriateness of home healthcare claims submitted under Part A of Medicare was a POC that included the physician order for home healthcare, diagnoses, types of services, frequency of visits, prognosis, rehabilitation potential, functional limitations, activities permitted, medications, treatments, nutritional requirements, safety measures, discharge plans, goals, and physician signature.  A POC signed and dated by the physician, or a signed and dated written prescription, or a verbal order recorded in the plan of care were required in advance of rendering services.  Also required was a signed certification statement by an attending physician certifying that the patient was confined to his or her home and was in need of the planned home health services, and an assessment of the beneficiary's condition and eligibility for home health services, called an Outcome and Assessment Information Set ("OASIS").

10.     Medicare Part A regulations required provider HHAs to maintain medical records of each visit made by a nurse, therapist, or home healthcare aide to a beneficiary. The record of a nurse's visit was required to describe, among other things, any significant observed signs or symptoms, any treatment and drugs administered, any reactions by the patient, any teaching and the understanding of the patient, and any changes in the patient's physical or emotional condition.  The home healthcare nurse, therapist or aide were required to document the hands-on personal care provided to the beneficiary if the services were deemed necessary to maintain the beneficiary's health or to facilitate treatment of the beneficiary's primary illness or injury.  These written medical records

4

were generally created and maintained in the form of "visit notes" and "home health aide notes/observations."

## The Hospital

11.    The Hospital referred to herein was a nonprofit corporation which provided healthcare services.  The Hospital was a "health care provider" within the meaning of Title 42, United States Code, Section 1320d-1(a)(3) and thus was subject to the criminal penalties of Title 42, United States Code, Section 1320d-6.

## The Defendants

12.    Defendant NICK PATZAKIS, D.O., a resident of Harris County, Texas, was a doctor of osteopathic medicine, and among other positions, was the medical director of Jackson Home Healthcare, Inc. ("Jackson Home Healthcare") and the medical director of Prestige Health Services, Inc. ("Prestige").

13.    Defendant VALDIE JACKSON, a resident of Harris County, Texas, was the registered agent and director of Jackson Home Healthcare, a home health agency and an enrolled Medicare provider.

14.    Defendant VALNITA TURNER, R.N., a resident of Harris County, Texas, was the registered agent and director of Houston Compassionate Care, Inc. ("Houston Compassionate"), a home health agency and an enrolled Medicare provider; and the registered agent and director of Texas Comprehensive Healthcare Resources, Inc. ("Texas Comprehensive"), a Texas corporation.  She was also a registered nurse, and among other positions, was the Director of Nursing at Prestige.

15.    Defendant JARVIS THOMAS, a resident of Harris County, Texas, was an employee of the Hospital.

16.    Defendant ROSA DAVIS, R.N., a resident of Harris County, Texas, was a registered nurse, and among other positions, was the Director of Nursing at Jackson Home Healthcare.

17.    Defendant MARTHA CLAIRE DENNING, R.N., a resident of Harris County, Texas, was a registered nurse, and among other positions, was the Director of Nursing at Houston Compassionate.

## COUNT 1
### Conspiracy to Disclose Individually Identifiable Health Information
### (18 U.S.C. § 371)

18.    Paragraphs 1 through 17 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

19.    Beginning in or before 2008, and continuing through May 2012, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, the defendants,

**VALDIE JACKSON and JARVIS THOMAS,**

did knowingly and willfully combine, conspire, confederate and agree with each other and with others known and unknown to the Grand Jury, to commit an offense against the United States, that is, to willfully cause the knowing disclosure of individually identifiable health information to another person with intent to sell, transfer, or use such information for commercial advantage and private gain in violation of Title 42, United

States Code, Section 1320d-6(a)(3) and (b)(3).

## Object of the Conspiracy

20.    It was the object of the conspiracy for defendants to unlawfully obtain individually identifiable health information, to determine whether such individuals were covered by Medicare, and to solicit individuals who were covered by Medicare for home health services, without involving a physician in ordering services or establishing a plan of care, and without regard to whether the individuals were confined to the home and in need of skilled nursing services.

## Manner and Means of The Conspiracy

21.    The manner and means by which the defendants sought to accomplish the object and purpose of the conspiracy included, among others, the following:

a.    Defendant JARVIS THOMAS, without authorization, would access the Hospital's files; would obtain individually identifiable health information relating to individuals, including names, addresses, telephone numbers and diagnoses; and would disclose that information to Defendant VALDIE JACKSON.

b.    Defendant VALDIE JACKSON would pay Defendant JARVIS THOMAS for the individually identifiable health information, and would disclose that information to others, including Defendant VALNITA TURNER, and employees of Texas Comprehensive.

c.    Defendant VALNITA TURNER, would and did cause Houston Compassionate's provider number to be used to access a Medicare eligibility

7

database to ascertain which of the individuals, whose individually identifiable health information had been disclosed, qualified as Medicare beneficiaries.

d.      Employees of Texas Comprehensive would use the stolen information to contact beneficiaries to solicit them for home health care services, and would falsely state that the beneficiary's physician had referred the beneficiary for a home health evaluation, when in truth, the beneficiary's physician had not made a referral, had not established the plan of care, and was unaware that the beneficiary was being contacted by a home health agency.

e.      Defendant VALDIE JACKSON would and did cause Jackson Home Healthcare to submit Medicare requests for anticipated payments and claims for home health services provided to beneficiaries who had been so solicited, when in truth, the home health services did not qualify for payment because, among other reasons, the patients (i) were not under the care of a physician who had established the plan of care, (ii) were not confined to the home, and (iii) were not in need of skilled nursing care.

f.      Defendant VALNITA TURNER would and did cause Houston Compassionate to submit to Medicare requests for anticipated payments and claims for home health services provided to beneficiaries who had been so solicited, when in truth, the home health services did not qualify for payment because, among other reasons, the patients (i) were not under the care of a physician who had established the plan of care, (ii) were not confined to the home,

8

and (iii) were not in need of skilled nursing care.

g.    Prestige would submit to Medicare requests for anticipated payments and claims for home health services provided to beneficiaries, who had been so solicited, when in truth, the home health services did not qualify for payment because, among other reasons, the patients (i) were not under the care of a physician who had established the plan of care, (ii) were not confined to the home, and (iii) were not in need of skilled nursing care.

h.    Jackson Home Healthcare would and did solicit numerous beneficiaries whose individually identifiable health information had been accessed by JARVIS THOMAS and sold to defendant VALDIE JACKSON; and would and did submit requests for anticipated payments and claims related to at least 101 of those beneficiaries. As a result, Jackson Home Healthcare did receive approximately $489,428.07 in payments from Medicare.

i.    Houston Compassionate would and did solicit numerous beneficiaries whose individually identifiable health information had been accessed by JARVIS THOMAS and sold to defendant VALDIE JACKSON ; and would and did submit requests for anticipated payments and claims related to at least 96 of those beneficiaries. As a result, Houston Compassionate did receive approximately $762,631.38 in Medicare payments.

j.    Prestige would and did solicit numerous beneficiaries whose individually identifiable health information had been accessed by JARVIS THOMAS and sold

9

to defendant VALDIE JACKSON ; and would and did submit requests for anticipated payments and claims related to at least 59 of those beneficiaries. As a result, Prestige did receive at least $451,757.35 in payments from Medicare.

## Overt Acts

22.    In furtherance of the conspiracy, and to accomplish its object and purpose, the conspirators committed and caused to be committed, in the Houston Division of the Southern District of Texas, the following overt acts:

a.    In or about January 2011, Defendant JARVIS THOMAS provided to Defendant VALDIE JACKSON individually identifiable health information that Defendant JARVIS THOMAS had obtained by accessing the Hospital's records.

b.    In or about January 2011, Defendant VALDIE JACKSON provided to Defendant VALNITA TURNER, and employees of Texas Comprehensive, individually identifiable health information that he obtained from Defendant JARVIS THOMAS.

c.    On or about November 27, 2010, following the wrongful disclosure of individually identifiable health information by JARVIS THOMAS, employees of Texas Comprehensive and Jackson Home Healthcare contacted and completed a referral sheet for Medicare beneficiary C.P.

d.    On or about March 23, 2010, following the wrongful disclosure of individually identifiable health information by JARVIS THOMAS, employees of Texas Comprehensive and Prestige contacted and completed a referral sheet for

10

Medicare beneficiary P.O.

e.    On or about February 28, 2011, following the wrongful disclosure of individually identifiable health information by JARVIS THOMAS, employees of Texas Comprehensive and Jackson Home Healthcare contacted and completed a referral sheet for Medicare beneficiary J.C.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

23.    Paragraphs 1 through 17, and 21 through 22 of this Superseding Indictment are realleged and incorporated by reference as if fully set forth herein.

24.    Beginning in or before 2008, and continuing through May 2012, the exact dates being unknown to the Grand Jury, in the Houston Division of the Southern District of Texas, and elsewhere, the defendants,

**VALDIE JACKSON, VALNITA TURNER, R.N., NICK PATZAKIS, D.O.,**

**ROSA DAVIS, R.N., and MARTHA CLAIRE DENNING, R.N.,**

did knowingly and willfully combine, conspire, confederate and agree with each other and with others known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the

11

custody and control of, said healthcare benefit program, in connection with the delivery of and payment for healthcare benefits, items and services.

## Objects of the Conspiracy

25.    It was the object of the conspiracy for defendants to unlawfully enrich themselves by, among other things, (a) submitting requests for anticipated payments and claims for home health services which were not medically necessary, and for which a physician did not order the services, or establish the plan of care;  (b) concealing and shielding from discovery the absence of physician involvement in ordering services and establishing  plans of care, and that the services were not medically necessary.

## Manner and Means of the Conspiracy

26.    The manner and means by which the defendants sought to accomplish the purpose and object of the conspiracy included, among other things, the following:

a.    Defendants VALNITA TURNER, ROSA DAVIS, MARTHA CLAIRE DENNING, and other employees of Prestige, Jackson Home Healthcare, and Houston Compassionate, completed CMS-485s, listing the physician name and address of a doctor even though that doctor had not ordered home health services, had not authorized a visit to the patient, and had not established the plan of care.

b.    Defendants VALNITA TURNER, ROSA DAVIS, MARTHA CLAIRE DENNING, and other employees of Prestige, Jackson Home Healthcare, and Houston Compassionate signed and dated Form CMS-485, at Line 23, "Nurse's Signature and Date of Verbal SOC Where Applicable," when in fact the doctor

12

who was listed as the attending physician had not established a plan of care, or given a written or verbal order, referral, or authorization to visit the patient.

c.    Defendants VALNITA TURNER, ROSA DAVIS, and MARTHA CLAIRE DENNING would obtain, and direct others to obtain, signatures on CMS Form 485, Line 27, "Attending Physician's Signature and Date Signed," from a doctor who was not listed as the attending physician, was not the attending physician, was not authorized by the attending physician to care for his/her patients in his/her absence, did not authorize the services or the plan of care, and did not periodically review the plan. Further, the patient was not under the care of either the listed attending physician or the signing physician, and the patient was not confined to the home and in need of skilled nursing services.

d.    Defendants VALDIE JACKSON and VALNITA TURNER would submit, and cause to be submitted, to Medicare requests for anticipated payments for home health services in which the physician listed as the attending physician had not ordered home health services, had not established a plan of care, and was unaware that the beneficiary had been contacted for home health services.  These home health services did not qualify for payment because, among other reasons, the patients (i) were not under the care of a physician who had established the plan of care, (ii) were not confined to the home, and (iii) were not in need of skilled nursing services.

e.    Defendant NICK PATZAKIS, D.O., would sign CMS-485 forms, Line 27,

13

when in fact he was not the attending physician; he was not authorized by the attending physician to care for his/her patients in his/her absence; the patient was not under his care; he did not authorize the services or the plan of care prior to treatment; he did not periodically review the plan; and the patient was not confined to the home and in need of skilled nursing care.

f.　　At the direction of Defendants VALNITA TURNER, MARTHA CLAIRE DENNING, and other employees of Houston Compassionate, the Medical Director of Houston Compassionate would sign CMS Form 485, Line 27, when in fact he was not the attending physician, he was not authorized by the attending physician to care for his/her patients in his/her absence, the patient was not under his care, he did not authorize the services or the plan of care, and did not periodically review the plan. Further, the patient was not confined to the home and in need of skilled nursing care.

g.　　Defendant VALDIE JACKSON would submit, and cause to be submitted, requests for anticipated payments and claims by Jackson Home Healthcare, and payments would be received, where a physician had not ordered services or established the plan of care, and the patient was not confined to the home or in need of skilled nursing care. As a result, Medicare paid Jackson Home Healthcare approximately $1,509,460.45.

h.　　Defendant VALNITA TURNER would submit, and cause to be submitted, requests for anticipated payments and claims by Houston Compassionate, and

14

payments would be received, where a physician had not ordered services or established the plan of care. As a result, Medicare paid Houston Compassionate approximately $7,538,947.63.

i.     Requests for anticipated payments and claims would be submitted by Prestige, and payments would be received, where a physician had not ordered services or established the plan of care. As a result, Prestige received $3,089,649.09 in payments from Medicare.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 3-8
### Health Care Fraud
### (18 U.S.C. § 1347)

27.    Paragraphs 1 through 17, 21 through 22, and 26, of this Superseding Indictment are realleged and incorporated by reference as if fully set forth herein.

28.    On or about the dates specified below, in the Houston Division of the Southern District of Texas, and elsewhere, the defendants,

**VALDIE JACKSON, VALNITA TURNER, R.N., ROSA DAVIS, R.N., and**

**MARTHA CLAIRE DENNING, R.N.,**

in connection with the payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare, a health care benefit program, affecting commerce, as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and

15

under the custody and control of Medicare, that is, the defendants submitted and aided

and abetted the submission of false and fraudulent claims to Medicare, seeking

reimbursement for the cost of various unqualified and medically unnecessary home

health services, set forth below:

| Count | Defendant(s) | HHA | Medicare Beneficiary | Start of Care Date | Payment Date | Approx. Medicare Payment |
|---|---|---|---|---|---|---|
| 3 | Valdie Jackson Rosa Davis | JHH | C.P. | 11/27/2010 | 12/31/2010 | $1,243.69 |
| 4 | Valdie Jackson Rosa Davis | JHH | S.L. | 06/15/2010 | 12/10/2010 | $1,690.13 |
| 5 | Valnita Turner Martha Claire Denning | HCC | B.J. | 05/12/2009 | 02/26/2010 | $3,805.73 |
| 6 | Valnita Turner Martha Claire Denning | HCC | M.D. | 04/10/2009 | 02/05/2010 | $5,103.85 |
| 7 | Valnita Turner | PHS | J.C. | 02/28/2011 | 08/05/2011 | $1,465.76 |
| 8 | Valnita Turner | PHS | P.O. | 03/23/2010 | 06/18/2010 | $2,275.23 |

All in violation of Title 18, United States Code, Section 1347.

## COUNTS 9-12
### False Statements Relating to Health Care Matters
### (Violation of 18 U.S.C. § 1035 and 2)

29. Paragraphs 1 through 17, 21 through 22, and 26, of the General Allegations

section of this Superseding Indictment are realleged and incorporated by reference as if

fully set forth herein.

30. On or about the dates set forth below, in Harris County, in the Southern

District of Texas, and elsewhere, the defendant,

16

# NICK PATZAKIS, D.O.,

did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations, and make and use materially false writings and documents, as set forth below, knowing the same to contain materially false, fictitious, and fraudulent statements and entries, in connection with the delivery of and payment for health care benefits, items, and services, and in a matter involving a health care benefit program, specifically Medicare:

| Count | Medicare Beneficiary | Agency | Approx. Start of Care Date | Description | Approx. Medicare Payment |
|---|---|---|---|---|---|
| 9 | C.P. | JHH | 11/27/2010 | Certification | $1,243.69 |
| 10 | S.L. | JHH | 6/15/2010 | Recertification | $845.07 |
| 11 | J.C. | PHS | 2/28/11 | Certification | $1,465.76 |
| 12 | P.O. | PHS | 3/23/10 | Certification | $2,275.23 |

All in violation of Title 18, United States Code, Sections 1035 and 2.

# NOTICE OF CRIMINAL FORFEITURE
[18 U.S.C. § 982(a)(7)]

31.    The allegations contained in paragraphs 1 through 30 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant has an interest.

32.    Pursuant to Title 18, United States Code, Section 982(a)(7), the United States of America gives notice to the defendants that in the event of conviction for any of the violations charged in Counts One through Twelve of the Superseding Indictment, the United States intends to forfeit all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of any such offense, including, but not limited to, a money judgment in the amount of at least **$12,137,997.17.**

33.    In the event that the property subject to forfeiture as a result of any act or omission of a defendant:

    a.    cannot be located upon the exercise of due diligence;
    b.    has been transferred or sold to, or deposited with, a third party;
    c.    has been placed beyond the jurisdiction of the court;
    d.    has been substantially diminished in value; or
    e.    has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of any other property of the defendant up to the total value of the property subject to forfeiture, pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 18, United States

Code, Section 982(b)(1).

A TRUE BILL

Original Signature on File

FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

By:     /s/ James S. Seaman
James S. Seaman
Special Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section
1301 New York Ave, NW
Washington, DC 20530
Cell:  (202) 573-3715
E-mail:  james.seaman@usdoj.gov