UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


UNITED STATES OF AMERICA     .   4:12-CR-00244

VERSUS                       .   HOUSTON, TEXAS

NICK PATZAKIS, MD            .

VALDIE JACKSON, MD           .

VALNITA TURNER, RN           .

JARVIS THOMAS               .

ROSA DAVIS                  .

MARTHA CLAIRE DENNING        .   JULY 9, 2013

. . . . . . . . . . . . . . .   10:00 A.M.


TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE GRAY MILLER
UNITED STATES DISTRICT JUDGE


*APPEARANCES*


FOR THE GOVERNMENT:

    Laura M. K. Cordova
    Christopher J. Cestaro
    UNITED STATES DEPARTMENT OF JUSTICE
    Criminal Division - Fraud Section
    1400 New York Avenue
    Washington, DC  20005

*APPEARANCES - CONTINUED*

FOR THE DEFENDANT VALDIE JACKSON, MD:

    F. Andino Reynal
    STRADLEY, DAVIS & REYNAL LLP
    917 Franklin Street
    Sixth Floor
    Houston, Texas  77002

FOR THE DEFENDANT VALNITA TURNER, RN:

    Sean Buckley
    DEGUERIN & DICKSON
    The Republic Building
    1018 Preston Street
    Seventh Floor
    Houston, Texas  77002

FOR THE DEFENDANT MARTHA CLAIRE DENNING:

    James Alston
    Attorney at Law
    914 Preston Street
    Suite 3N
    Houston, Texas  77002

OFFICIAL COURT REPORTER:

    Mayra Malone, CSR, RMR, CRR
    U.S. Courthouse
    515 Rusk, Room 8004
    Houston, Texas  77002

Proceedings recorded by mechanical stenography.  Transcript produced by computer-aided transcription.

- - - - -

P R O C E E D I N G S

THE COURT:  We are here in Criminal Case 12-244, United States of America versus Nick Patzakis and others.

Who is here for the government?

MS. CORDOVA:  Laura Cordova and Christopher Cestaro. Good morning, Your Honor.

THE COURT:  Good morning.  And, let's see, for Mr. Patzakis.  Is his attorney present?  No.

Ms. Jackson, is Ms. Jackson's attorney present?

MR. REYNAL:  Mr. Jackson, yes, Andino Reynal for Mr. Jackson.

THE COURT:  I'm sorry.  You are here for Mr. Davis.

All right.  Let's see.  For Ms. Turner?

MR. BUCKLEY:  Good morning, Your Honor.  Sean Buckley for Valnita Turner.

THE COURT:  All right.  And, let's see, Mr. Thomas? Mr. Williams is not here.

The defendant Rosa Davis, her attorney is Mr. Smith, who I understand is in trial.

And, let's see, Ms. Denning, Mr. Alston is here?

MR. ALSTON:  Yes, Your Honor.

THE COURT:  I had assumed that Mr. Smith was going to be present for this hearing.

Mr. Buckley, what's up with that?

MR. BUCKLEY:  That was my assumption too, Your Honor.

When I reviewed the Court's order for this hearing, my understanding was that all counsel were required to be present, and there was a clarification about which defendants.  I knew that Ms. Turner was required to be here, but because I believed that Mr. Smith would be here, I did not subpoena him.  And I have one witness on the issue of severance, because the severance relates to potentially a conflict with his attorney-client relationship with Ms. Turner.  He would be that witness, Your Honor.

THE COURT:  All right.  And since he is not here, how do you suggest we proceed, or do you suggest we reschedule?

MR. BUCKLEY:  Well, if the Court would allow, I would be pleased to make a brief proffer of what I think the evidence or issues will be.  I perceive that the government and I may have disagreement about admissibility of certain information, which is directly related to whether there is a problem that requires severance or some other remedy.

But the other alternative, of course, Your Honor, is to postpone the hearing, and I apologize for not subpoenaing him.  I just at the time didn't realize it was necessary.

THE COURT:  Well, I'm surprised he is not here, but it would have been wise to subpoena him or at least to talk to him to make sure that he was going to be here.  But let me ask you, based on -- I guess you talked with him about the proposed testimony so you have an idea in order to support a proffer?

MR. BUCKLEY:  I do, Your Honor.

THE COURT:  Is there any objection from the government to Mr. Buckley proffering the proposed testimony of Mr. Smith?

MS. CORDOVA:  No objection, Your Honor.

THE COURT:  Why don't we proceed that way and then I think we can make a determination about whether or not we need to hear from Mr. Smith directly and maybe we can determine some of the admissibility questions.  So let's proceed that way.

MR. BUCKLEY:  May I proffer from counsel table?

THE COURT:  You may.

MR. BUCKLEY:  The first indictment in this case was issued in April of 2012, Your Honor.  In approximately December, January -- December 2011, January 2012 -- just a few months prior, Valnita Turner went to Wendle Smith, the attorney, seeking legal counsel.  And based on information and belief, there was a development of an attorney-client relationship which was brief, but I believe it did exist.

Now, putting that in context, Valnita Turner is by the terms of the indictment the owner and arguably the operator of several entities, namely Houston Compassionate Care, which is the subject of the indictment.  And the allegation is that Houston Compassionate Care, along with other entities, were the low side of the fraudulent activity.  So naturally, given Valnita Turner's position as owner, operator in that general capacity, her knowledge, her involvement in the

operations of the company and her knowledge of the details of the operations of the company are highly relevant to connecting her or not connecting her to fraudulent activity that is established by the government in its case in chief.

So the relevance of the issue at hand is that when Valnita Turner just several months prior to the first indictment sought counsel from Wendle Smith, her purpose was to get Mr. Smith's assistance in understanding whether the company and she were being fleeced by employees of the company and people who were managing the company; namely, without getting into a rabbit trail, a CPA, a business manager named Forster Duru, who may or may not be an unindicted co-conspirator, as well as people associated with and independent from Mr. Duru, who were involved in different operations of the company.

Valnita Turner was concerned that these people in some unknown way were stealing from the company and thus from her.  She -- her belief was that she in her experience did not have the authority to get to the bottom, to get answers from Mr. Duru, to get answers and accountability from anybody else in the company, so that was why she went to Mr. Smith.

If Valnita Turner testifies, then her testimony would be -- I would expect it would be that, that she did not have control and authority enough to get a responsiveness about what was going on in the company.  And Mr. Smith's testimony about the nature of that attorney-client relationship and the

purpose of it is corroborated and directly relevant to whether there was some belief or some experience that Valnita Turner had that -- where she didn't have this authority, which is inconsistent with what I expect the government's view or position would be, that she was very much involved in the day-to-day operations and control of the company.

And, again, not speaking for the government, they are perfectly capable of doing that themselves, this is what I anticipate of the picture that will be painted.

So given that element, I think that Valnita Turner's right to present a complete defense hinges on if we chose -- and I expect that we will -- to flush out this evidence that she was not in full control and authority for the company.

Secondly, even if Mr. Smith is not called as a witness, if Valnita Turner testifies, and Mr. Smith has had some attorney-client conversation with Valnita Turner on subjects that are generally, if not directly, related to several elements of the government's and the defense's case, which would put Mr. Smith in perhaps a conflicting situation of having to fully represent his client, Rosa Davis, by cross-examining fully, if he wanted to, Valnita Turner with perhaps the prejudice or weight of knowing things that he shouldn't know if he is cross-examining her, so it is just a big mess, Your Honor.

One option that I had was to attempt to disqualify Mr. Smith, and, of course, as Your Honor knows, I filed a motion to sever.  It is not a situation I have encountered before.  I'm a little bit at a loss, but that is what I understand in a nutshell the issue to be.

THE COURT:  All right.  So the testimony that Mr. Smith will give will be that he had an attorney-client relationship with Ms. Turner?

MR. BUCKLEY:  That's what I anticipate.

THE COURT:  And how long did that last?

MR. BUCKLEY:  I believe it only lasted a month or less.  It was not lengthy.

THE COURT:  And his specific testimony is going to be that she did not have control of the company or know the details of what was going on day to day?

MR. BUCKLEY:  I don't believe that he has personal knowledge of that, Your Honor, other than hearsay that came from her.  But what I think he can do is corroborate that the purpose of Valnita Turner seeking counsel with Mr. Smith was because -- to address this problem that she was having, getting information or accountability from the company.

And I think where this is coming in, most importantly, is if Valnita Turner testifies that she was having difficulty getting accountability and a response from the company, that then to corroborate that, Mr. Smith's testimony

is critical.

THE COURT:  So do you anticipate that he would only testify if she testifies?

MR. BUCKLEY:  It is most clear to me now that he would.  Of course, I can't rule out that he would not testify if she does not testify.  I believe that I would want to call him anyway.  I see the starkest relevance being in connection with Valnita Turner's testimony, but I do believe that I would seek to call him as a witness anyway.

THE COURT:  All right.  What is the government's position on this?

MS. CORDOVA:  Your Honor, the government's position -- I think the most important issue is the potential conflict of interest between Valnita Turner and Rosa Davis and their defenses, and I think this comes into play if Valnita Turner decides to testify.  But I think it could also come into play just at trial where it seems that Valnita Turner's defense will be in part that she didn't have any control over the company; she didn't know what was going on.  And it seems based on what the government understands at this point that Rosa Davis' defense will be, "I was just doing what I was told by Valnita Turner.  She was the person running the ship.  I was just more of a clerk, clerical person, doing what I was told."

I think that there is potentially an actual conflict there where if Mr. Smith continues to represent

Ms. Davis, he could be an actual conflict in their defenses.

The government doesn't believe that the testimony by Mr. Smith would be admissible regarding the state of the company or how things operated at the company, whether Ms. Turner had involvement there, because he simply didn't have personal knowledge of that.  Anything he learned would be hearsay.  So I haven't heard any evidence I think is admissible except the fact that I think he could testify that she hired him.  But beyond that, what he learned in the investigation, I'm not sure that there is anything he could testify to that wouldn't be based on hearsay and therefore inadmissible.  But I do think there is a serious concern regarding potential defenses of the defendants, and I'm not sure that severance cures that.  It may require an actual recusal by Mr. Smith in this case.  I don't know.

THE COURT:  All right.

MR. BUCKLEY:  I agree with the government that Mr. Smith -- any testimony by Mr. Smith as to what -- whether or not Valnita Turner had control or not would not be admissible.  I don't think there is any question about that.

The biggest benefit of that testimony would be that the purpose of his legal involvement was to investigate whether there was fraud in the company because of her inability to do that herself.

I also share a concern about the conflict -- not

the conflict of defenses itself but the conflict that may accrue to the lawyer. But I think that that particular conflict may accrue more to Ms. Davis than to Ms. Turner, but I also see the problem.

THE COURT: Well, I guess preliminarily I think I agree with the government that the testimony is probably not admissible, which would seem to militate against a severance, but the conflict question troubles me. And without Mr. Smith here, it is really not possible to explore that in any more detail. And you haven't moved to disqualify him.

MR. BUCKLEY: I have not, Your Honor.

THE COURT: Do you plan to?

MR. BUCKLEY: I'm open to that option, Your Honor, and just speaking candidly, the explanation is that -- it is not a legal excuse, but it is the explanation. In a multi-defendant trial, in my experience, the dynamics between the lawyers and the defendants is very important. Certainly shooting a torpedo at Mr. Smith changes that dynamic. Again, that is a judgment call that doesn't have a legal basis, but that is the explanation for why I have not done so.

THE COURT: Well, if he were to be disqualified, somebody else would have to step into his shoes and be ready for trial in September, so I think it is something we need to take care of. And there is no reason why I couldn't sua sponte disqualify him if I thought it was necessary to resolve this

potential conflict.  I assume I have that authority.

MR. BUCKLEY:  I believe you do, Your Honor.

THE COURT:  All right.  Let's set a hearing next week, Rhonda, on a show cause on why I shouldn't disqualify Mr. Smith because of this conflict.

THE CASE MANAGER:  Thursday, July 18th at 3:00.

THE COURT:  Thursday, the 18th, at 3:00.

MR. BUCKLEY:  Your Honor, I'm always happy to comply with the Court's order.  The 18th I have planned and scheduled, paid for a trip to St. Thomas.  Of course, I will comply with the Court's order.

THE COURT:  Let's see what else Rhonda has got.

THE CASE MANAGER:  Monday the 22nd?

MR. BUCKLEY:  I'm returning on the 22nd.

THE CASE MANAGER:  Tuesday, the 23rd?

MR. BUCKLEY:  That's fine.

THE COURT:  Tuesday, the 23rd.  What time?

THE CASE MANAGER:  10:00 a.m.

MR. BUCKLEY:  Thank you for your courtesy, Your Honor.

THE COURT:  Sure.  And it's important that Mr. Smith be present obviously.

All right.  Is there anything -- there are a lot of motions that have been filed by the various parties, discovery type motions which I think the government is in agreement with, as I understand it.  And I think Mr. Alston has

filed a motion to adopt the motions of the other defendants.

MR. ALSTON:  Yes, Your Honor.

THE COURT:  Am I correct in the government's position on that?

MS. CORDOVA:  Yes, Your Honor.  The government does not oppose most of the motions.  There are simply two that the government opposes.  One is Valdie Jackson's motion, Document Number 93, for Rule 12(d) designation.  We just oppose it as moot because we will be providing a witness list in accordance with the Court's scheduling order.

THE COURT:  All right.

MS. CORDOVA:  And Document Number 94, Jackson's general as well as specific requests for all evidence and information under Brady and its progeny.  This motion is simply overly broad.  The government continues to comply with its Brady obligations and will do so, and this motion asked for materials that are outside the scope of Brady.

THE COURT:  Mr. Reynal?

MR. REYNAL:  I think that we have an agreement with the government.  The government is going to comply with Brady. The government is probably in agreement with the Court order that they comply with Brady.  They have complied with Brady. They continue to comply with Brady.

In terms of the witness designation, I believe Ms. Cordova agreed to give us the witness list -- how many days

before trial?

MS. CORDOVA:  I believe it is 80 days per the scheduling order.

MR. REYNAL:  And I think that would probably be sufficient if we got that and hopefully we can get Jencks before that to the extent they have it.  It is going to be a long trial.  There's a lot of witnesses, a lot of stuff to go through, and I think it would help the efficiency.  The longer we have to carve stuff out and look through it, the more efficient we can be.

THE COURT:  Well, I will rely on the lawyers to continue to work together on those issues because I don't think that is something I need to wade into unless there is a problem.  And with respect to Ms. Jackson's -- Mr. Jackson's -- sorry -- Mr. Jackson's motion to suppress, that has been withdrawn; is that correct?

MR. REYNAL:  Correct.

THE COURT:  All right.  Okay.  I think other than that, we will deal with the disqualification issue at the hearing that's set, and I think we are probably finished. Okay.

MS. CORDOVA:  Thank you, Your Honor.

MR. REYNAL:  Thank you, Your Honor.

MR. BUCKLEY:  Thank you, Your Honor.

MR. ALSTON:  Thank you, Your Honor.

*(Proceedings concluded at 10:54 a.m.)*

* * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled cause.

Date: August 14, 2013


                            /s/ Mayra Malone
                            ---------------------------------------
                            Mayra Malone, CSR, RMR, CRR
                            Official Court Reporter